# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION

## CRIMINAL CASE NO. 2:12-cr-00032-MR-DLH

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| **vs.** | ) | **O R D E R** |
| | ) | |
| | ) | |
| **MITCHELL LEON HUGHES.** | ) | |
| | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Defendant's Motion to Suppress Evidence [Doc. 9]; the Magistrate Judge's Memorandum and Recommendation [Doc. 16], recommending that the Defendant's Motion to Suppress be denied; and the Defendant's Written Objections to the Magistrate Judge's Memorandum and Recommendation. [Doc. 18].

## I.    PROCEDURAL HISTORY

On December 4, 2012, the Defendant was charged in a Bill of Indictment with one count of knowingly possessing a firearm after having been convicted of a felony, in violation of 18 § U.S.C. 922(g)(1). [Doc. 1]. On February 8, 2013, the Defendant filed a Motion to Suppress, arguing that his Fourth Amendment right to be free from unreasonable search and

seizure was violated when law enforcement detained him for a period longer than needed to determine the existence of the violation that first prompted a traffic stop and subsequently found a gun in the vehicle. [Doc. 9].

On March 5, 2013, the Honorable Dennis L. Howell, United States Magistrate Judge, conducted an evidentiary hearing on the Defendant's motion. On May 29, 2013 the Magistrate Judge issued a Memorandum and Recommendation, recommending that the Motion to Suppress be denied. [Doc. 16]. The Defendant timely filed Objections to the Memorandum and Recommendation. [Doc. 18]

## II. STANDARD OF REVIEW

A district court may refer a motion to suppress to a magistrate judge for a recommendation pursuant to Rule 59(b)(1) of the Federal Rules of Criminal Procedure. The Court must consider any objection to the magistrate judge's recommendation <u>de novo</u>. Fed. R. Crim. P. 59(b)(3). Where no objection is made, however, the Court need "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." <u>Diamond v. Colonial Life & Accident Ins. Co.</u>, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72, 1983 advisory committee note).

## III. FACTUAL BACKGROUND

Upon careful examination of the evidentiary hearing transcript in this case, the Court finds that the Magistrate Judge's findings of fact as set forth in pages 2 through 9 of the Memorandum and Recommendation are correct and deserving of adoption by this Court. These findings are therefore incorporated herein.

## IV. DISCUSSION

The Defendant objects to the Magistrate Judge's conclusion that the stop and seizure of his vehicle was reasonable and not in violation of the Fourth Amendment. Specifically, the Defendant argues that Deputy McKinney did not have reasonable cause to stop the vehicle because Deputy McKinney himself testified that he observed that the Defendant was wearing his seatbelt when he first approached the vehicle during the traffic stop. The passenger in the vehicle, Misty Stone, further testified that the Defendant was wearing his seatbelt at all times while operating the vehicle. This evidence, the Defendant contends, establishes that the Defendant had not committed any observable traffic violation prior to Deputy McKinney initiating the traffic stop. [Doc. 18 at 2].

Deputy McKinney testified that as the Defendant's vehicle passed him, he observed that the driver was not wearing a seatbelt, in violation of

North Carolina law. [T. at 6, 57]. The Magistrate Judge clearly found Deputy McKinney's testimony on this point to be credible, and the Court finds no basis to disturb the Magistrate Judge's credibility determination.[1] See United States v. Abu Ali, 528 F.3d 210, 232 (4th Cir. 2008); United States v. Harris, 331 F. App'x 242, 242 (4th Cir. 2009). After observing the seatbelt violation, Deputy McKinney also ran a computer check of the vehicle's license plate, from which he learned that the plate had been revoked by the State of Tennessee and that the license plate had not been assigned to the Defendant's vehicle. Driving with a revoked license plate and driving with a license plate that is assigned to another vehicle are both violations of North Carolina law, thus providing further justification for the

---

[1] Even if the Court were to credit the testimony of Misty Stone over the testimony of Deputy McKinney and find that the Defendant was in fact wearing his seatbelt at the time Deputy McKinney passed the Defendant's vehicle, the Court would still conclude that the stop was lawful. Federal courts have upheld the legality of stops based on mistaken observations of fact, so long as the mistaken observation was objectively reasonable. See e.g., United States v. Coplin, 463 F.3d 96, 101 (1st Cir. 2006) ("Stops premised on mistakes of fact . . . generally have been held constitutional so long as the mistake is objectively reasonable."); United States v. Williams, 878 F.Supp.2d 190, 200 (D.D.C. 2012) ("If an officer is mistaken as to a fact, but his mistake was objectively reasonable, courts have generally concluded that the stop itself is reasonable."); United States v. Lily, No. 09-20262, 2010 WL 259046, at *10 (E.D. Mich. Jan. 20, 2010) (Hluchaniuk, M.J.) ("if a police officer believes, in good faith, that facts exist, which establish an offense has been committed then probable cause exists, regardless of whether the defendant would ultimately be convicted of the offense or if it is later determined that the officer was mistaken"). In the present case, Deputy McKinney testified that he passed the Defendant on a two-lane road with no dividing median during daylight hours and that he was able to see the "metal part" of the Defendant's seatbelt as the vehicles passed. [T. at 5-6]. Based on this observation, it was objectively reasonable under the circumstances for Deputy McKinney to conclude that the Defendant was committing a seatbelt violation.

traffic stop.  See United States v. Branch, 537 F.3d 328, 335 (4th Cir. 2008) ("Observing a traffic violation provides sufficient justification for a police officer to detain the offending vehicle for as long as it takes to perform the traditional incidents of a routine traffic stop.").

The Defendant contends that Deputy McKinney could not have entered the license plate number before the initiation of the traffic stop because the officer did not have sufficient time to enter that information into his computer and receive the results before he pulled the vehicle over. While this hypothesis of events is certainly plausible, it is entirely unsupported by the record.  Deputy McKinney testified that he was able to drive with his left hand and work the computer with his right hand after he had turned around and was following the Defendant's vehicle.  [T. at 57-58].  Deputy McKinney further testified that within five or ten seconds, the computer returned information that the license plate was not associated with the Defendant's vehicle.  [Id. at 59].  No contrary evidence was offered or testimony elicited by Defendant's counsel as to the physical or temporal plausibility of Deputy McKinney's account of these specific events. The Magistrate Judge accepted the Deputy's testimony on this issue, and the Court sees no basis to disturb this credibility determination.

The Defendant also argues that even if the traffic stop was initially justified, Deputy McKinney's actions during the stop were not reasonably related in scope to the initial justification for the stop. [Doc. 18 at 3]. This argument, however, is without merit. When an officer conducts a traffic stop, the officer must "diligently pursue the purpose of the stop" and refrain from "embark[ing] on a sustained course of investigation." United States v. Digiovanni, 650 F.3d 498, 507 (4th Cir. 2011). Here, however, the officer did not artificially prolong the traffic stop to conduct some additional investigation unrelated to the purpose of the initial stop. After stopping the Defendant's vehicle, the Deputy requested the Defendant's driver's license and proof of insurance, which are normal activities associated with a routine traffic stop. Id. ("In the context of traffic stops, police diligence involves requesting a driver's license and vehicle registration, running a computer check, and issuing a ticket."); see also Branch, 537 F.3d at 337 ("If a police officer observes a traffic violation, he is justified in stopping the vehicle for long enough to issue the driver a citation and determine that the driver is entitled to operate his vehicle."). Upon requesting the Defendant's license, Deputy McKinney learned that the Defendant did not have a license in his possession; a further computer check indicated that the Defendant did not have a valid operator's license. These facts, combined

with the information Deputy McKinney previously learned about the reviked license plate, provided more than adequate justification for the detention of the Defendant.  The Defendant's suppression motion must be denied.

## V.    CONCLUSION

For the reasons stated herein, the Court concludes that the Magistrate Judge's findings of fact are correct and that his conclusions of law are consistent with current law.  Accordingly, the Court overrules the Defendant's objections to the Memorandum and Recommendation and hereby accepts the Magistrate Judge's recommendation that the motion to suppress be denied.

Accordingly, **IT IS, THEREFORE, ORDERED** that the Defendant's Written Objections to the Magistrate Judge's Memorandum and Recommendation [Doc. 18] are **OVERRULED**; the Magistrate Judge's Memorandum and Recommendation [Doc. 16] is **ACCEPTED**; and the Defendant's Motion to Suppress Evidence [Doc. 9] is **DENIED**.

**IT IS SO ORDERED.**    Signed: July 3, 2013

Martin Reidinger
United States District Judge